IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER J. ROSS,<br>        **Plaintiff,**<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>        **Defendant.** | )<br>)<br>)<br>)  **1:14-cv-00318-TFM**<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

July 29, 2015

## I.    Introduction

Roger J. Ross ("Plaintiff") brought this action for judicial review of the decision of the Acting Commissioner of Social Security ("Commissioner"), which denied his applications for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(f). Now pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 9, 11), which have been fully briefed (ECF Nos. 10, 12) and are ripe for disposition. For the following reasons, Plaintiff's motion will be **DENIED**, and the Acting Commissioner's motion will be **GRANTED**.

## II.    Background

Plaintiff was born on September 17, 1960.[1] (R. 21). He was married but is currently divorced and he has two adult sons. (R. 33, 471). He attended high school until the tenth grade

---

1.    As of his alleged onset date, Plaintiff was 51 years old, making him an individual closely approaching advanced age under the Social Security Administration Regulations. 20 C.F.R. § 404.1563(d) ("If you are closely approaching advanced age (age 50–54), we will consider that

1

and obtained a GED in 1990. (R. 34). He has relevant work experience as a tree trimmer, plumber's helper and press operator. (R. 21). However, the record reflects that he has not engaged in substantial gainful activity since his alleged onset date of August 11, 2011 (the date he was released from prison). (R. 16). Plaintiff was last employed as a plumber's helper in 2002 when he violated a parole condition. (R. 470).

A. **Medical Evidence**

Although Plaintiff provided additional evidence to the Appeals Council, the Court is limited in its review to the evidence that was provided to the ALJ and cannot consider the supplemental information.[2] Therefore, only the pertinent facts will be reviewed and discussed in this opinion.

Plaintiff testified that he was in a car accident on July 22, 2002 in which he fractured both feet and his right leg. (R. 34, 35). Plaintiff sustained a second fracture to his left ankle and a compression fracture of his spine in November 2002 when he fell from a tree. (R. 35, 377, 422, 449). In August 2003, the compression fracture of the spine was treated surgically with a thoracic fusion at T11 to L1. (R. 377, 422). Between July 2004 and August 2011, Plaintiff was incarcerated for aggravated assault with a motor vehicle and DUI.

On September 27, 2011, Dr. Jeffrey A. Baum examined Plaintiff for a potential hernia repair. (R. 377). Dr. Baum noted Plaintiff's history of spinal fusion surgery. (R. 377). Back x-rays taken that day showed a solid interbody fusion with a cage, normal alignment of the spine

---

your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.").
2.     "[T]he options open to the district court, when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ." *Matthews v. Apfel*, 239 F. 3d 589, 593 (3d Cir. 2001).

and no significant kyphosis. (R. 376). Dr. Baum further noted a healed incision on Plaintiff's left side, but could not appreciate the presence of a hernia. (R. 377). Dr. Baum observed that Plaintiff ambulated around the room easily and stated that Plaintiff was neurologically normal in his lower extremities, including his reflexes and muscle strength. (R. 377).

On October 13, 2011, Dr. John McKeating evaluated Plaintiff for his hernia. (R. 380). He concluded that Plaintiff did not have an actual hernia; rather he had some atonic musculature on the abdominal wall most likely related to his surgery in 2003. (R. 381). Dr. McKeating observed normal mental status, and normal reflexes, strength, sensation, gait and balance. (R. 381).

On December 19, 2011, Dr. Lisa Weidner evaluated Plaintiff for his complaints of mid-back and abdominal pain. (R. 421). Plaintiff complained of constant pain since his surgery. (R. 422). Plaintiff reported that he got around by walking and using public transportation. (R. 422). Dr. Weidner observed that Plaintiff's gait was non-antalgic. (R. 423). She noted no tenderness to palpation in the midline of his thoracic spine and some tenderness around the incision site. (R. 423). Plaintiff had symmetric muscle tone, girth, and strength, (R. 424). His reflexes and sensation were intact and straight leg raise was performed without reports of pain. (R. 424). Dr. Weidner suggested possible diagnostic/therapeutic intercostal nerve injections and adjustments to his medications. (R. 424).

On December 20, 2011, Dr. Shabana Khan, a psychiatrist, evaluated Plaintiff. (R. 437). Plaintiff reported that he had been depressed since 2002 and that he felt increased anxiety when he was in crowds and noisy environments. (R. 437). Dr. Khan noted that Plaintiff was dressed neatly, was cooperative and had appropriate behavior. (R. 438). Plaintiff's speech was logical, relevant and coherent and he denied any paranoia, suicidal/homicidal ideation and delusions. (R.

3

438). Dr. Kahn diagnosed Plaintiff with generalized anxiety disorder and depressive disorder and assigned a GAF[3] score of 55. (R. 438).

On January 19, 2012, Dr. Dane Wukich examined Plaintiff for mid-foot pain. (R. 575). She diagnosed Plaintiff with right mid-foot arthritis and left 5th metatarsophalangeal joint pain secondary to excessive bone formation. (R. 576). Plaintiff stated that he had not tried any type of adaptive footwear, inserts or physical therapy. (R. 575). Dr. Wukich offered Plaintiff a cortisone injection, which he declined. (R. 576).

On January 24, 2012, Eric Bernstein, PH.D., evaluated Plaintiff at the request of the Social Security Commissioner. (R. 469-473). Plaintiff walked to the appointment and reported no difficulties in doing so. (R. 469). During the evaluation, Plaintiff was serious and spoke with organization and clarity as he related his physical complaints and medical conditions. (R. 472). Plaintiff was oriented in all four spheres of person, place, situation and time. (R. 472). His knowledge of general information and abstract reasoning skills appeared to be low average. (R. 472). Dr. Bernstein diagnosed Plaintiff with depressive disorder and pain disorder associated with both psychological factors and a chronic general medical condition. (R. 473). He also assigned a GAF score of 48.[4] (R. 473).

During a follow-up examination in April 2012, Dr. Baum noted that Plaintiff's recent cervical MRI had shown moderate degenerative disc disease and some moderate foraminal

---

3. The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-ilness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 55 denotes "[m]oderate symptoms … OR moderate difficutly is social, occupational, or school functioning …" DSM-IV at 32.
4. A GAF of 48 indicates that the individual has "[s]erious symptoms … OR any serious impairment in social, occupationsl, or school functioning …" DSM-IV at 32.

narrowing. (R. 517-18). Plaintiff stated that Vicodin was somewhat helpful in relieving his symptoms. (R. 517).

### B. Procedural History

Plaintiff protectively filed an application for SSI on November 21, 2011, alleging disability as of August 8, 2011, as a result of previous fractures of the spine and feet, abdominal surgery, anxiety and compulsive disorder. (R. 57). After Plaintiff's claim was denied on February 2, 2012, at the administrative level, he requested a hearing, which was conducted on April 4, 2013 in Pittsburgh, Pennsylvania. (R. 14). Administrative Law Judge Alma S. de Leon ("ALJ") presided over the hearing. Although informed of his right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. An impartial vocational expert also appeared at the hearing. (R. 28-56).

On April 10, 2013, the ALJ issued an unfavorable decision to Plaintiff. (R. 14-23). Carefully following the applicable five-step sequential evaluation process, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since November 21, 2011 and that he had severe impairments including right mid-foot arthritis, left fifth metatarsophalangeal joint pain secondary to excessive bone formation, history of vertebral fracture with thoracic fusion, cervical degenerative disc disease, status post left ankle fracture, incisional hernia, depressive disorder, and generalized anxiety disorder. (R. 16). However, in reviewing the medical evidence and testimony, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. (R. 16-18). Specifically, the ALJ considered the medically determinable impairments under Listings 1.02, 1.04, 1.06, 12.04 and 12.06.

Regarding the Musculoskeletal System Listings 1.02, 1.04, and 1.06, the ALJ noted that Plaintiff is able to ambulate effectively and diagnostic testing failed to document evidence required to meet the Listings. (R. 16-17). Plaintiff's mental impairments were considered under the criteria of Listings 12.04 and 12.06 in which the ALJ concluded the mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.

In evaluating the Plaintiff's residual functional capacity ("RFC"), the ALJ found that the Plaintiff "has the RFC to perform light work as defined by 20 C.F.R. § 416.967(b) except that [Plaintiff] can lift and/or carry no more than 20 pounds; cannot reach overhead; is limited in pushing and/or pulling in his upper and lower extremities; should avoid exposure to vibration, temperature extremes and heights; is limited in his ability to deal directly with the public; can have only occasional contact with peers and supervisors; is limited in his ability to follow detailed instructions such that he is relegated to simple, routine tasks. (R. 18).

To determine the extent to which Plaintiff's limitations erode the occupation base, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience and RFC. The vocational expert testified that given all the factors, Plaintiff would be able to perform the requirements of occupations such as a cleaner, packer or mail clerk. Thus, consistent with the vocational expert's testimony, the ALJ found that Plaintiff is not disabled within the meaning of the Act. (R. 22).

Plaintiff submitted additional medical evidence to the Appeals Council; however, on October 28, 2014, the Appeals Council denied the request for review, making the decision of the ALJ the final decision of the Acting Commissioner. As noted above, this Court's review is limited to the record before the ALJ. *Mathews*, 239 F. 3d at 593.

On December 23, 2014, Plaintiff filed his Complaint in this Court, in which he seeks judicial review of the decision of the ALJ. The parties' cross-motions for summary judgment then followed.

## III. Legal Analysis

### A. Standard of Review

The Act strictly limits this Court's power to review the Commissioner's final decision. 42 U.S.C. §§ 1383(c)(3). "This Court neither undertakes a de novo review of the decision, nor does it re-weigh the evidence of the record." *Thomas v. Massanari,* 28 F.App'x 146, 147 (3d Cir. 2002). Instead, this Court's "review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence." *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Comm'r of Soc. Sec.*, 625 F.3d 798 (3d Cir. 2010). Importantly, "[t]he presence of evidence in the record that support a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x 761, 764 (3d Cir. 2009).

### B. Sequential Evaluation Process

When deciding whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. This process requires the

7

Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C. § 404.1520; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545-46 (3d Cir. 2003) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); *See also* 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways: (1) by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, *see Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell*, 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or, (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes a plaintiff from returning to his or her former job. *Newell*, 347 F.3d at 545-46; *Jones*, 364 F.3d at 503. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the

national economy. *Rutherford*, 399 F.3d at 551; *Newell*, 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

When a claimant has multiple impairments, which may not individually reach the level of severity necessary to qualify any one impairment for a Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

### C. Discussion

Plaintiff raises several grounds in support of reversing the decision of the ALJ: (1) the ALJ erred in determining that Plaintiff's impairments did not meet or medically equal Listings 1.02, 1.04 and 12.04; (2) the ALJ ignored the opinion of a consultative examiner; and (3) the ALJ improperly assigned an RFC of light work.

#### 1. The ALJ Properly Determined that Plaintiff Did Not Have an Impairment that Meets or Equals a Listed Impairment

Plaintiff argues that the ALJ erred in finding that his impairments did not meet or medically equal Listings 1.02, 1.04 and 12.04. As the Supreme Court has explained, "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Cathcart v. Astrue*, 2010 WL 1054049, at *15 (W.D. Pa. Mar. 22, 2010) (citing *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)).

For Listings 1.02 and 1.04, one of the criteria that Plaintiff must meet is that the impairment results in the inability to ambulate effectively as defined in 20 C.F.R. Part 404, Subpt. P., App'x 1, § 1.00B2b. The inability to ambulate effectively means an "extreme limitation of the ability to walk." *Id.* "Examples of "ineffective ambulation" under Listing 1.00B2b include, the inability to walk without the use of a walker, two crutches or two canes; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. *Roberts v. Astrue*, 2009 WL 3183084, at *7 (W.D. Pa. Sept. 30, 2009) (citing 20 C.F.R. Part 404, Subpt. p., App'x 1, § 1.00B2b(2)).

In this case, the ALJ determined that Plaintiff's impairments did not meet or medically equal Listing 1.02 or 1.04 because physical examinations of Plaintiff documented normal reflexes and strength, normal gait and balance, adequate range of motion in his hands, wrists, elbows, shoulders, knees, ankles and spine, and negative straight leg raising tests. (R. 375, 377, 381, 399, 410, 423-24, 469, 498, 505, 517). Plaintiff argues that objective medical evidence of record documented deformity in the left ankle with chronic pain, stiffness and limited motion. Plaintiff also relies on his testimony at the hearing to establish that he is unable to ambulate effectively by asserting that he can walk less than four blocks. Pl.'s Brief ECF No. 10 at 10. In light of the the ALJ's determination that Plaintiff was partially credible, however with the evidence of record, Plaintiff's argument is unpersuasive. Plaintiff's own testimony and evidence established that he is, in fact, able to ambulate effectively. At the hearing, Plaintiff testified that he could walk the four blocks to the grocery store and that he takes the bus quite a bit. (R. 43, 45). In fact, he walked fifteen minutes to a consultative appointment and the physician noted that Plaintiff had no difficulties in walking to the office. (R. 469). Moreover, there is no evidence of

record that Plaintiff requires the use of assistive devices to ambulate. Thus, there is substantial evidence to support the ALJ's determination that Plaintiff does not meet or medically equal Listings 1.02 and 1.04.

Plaintiff supplemented his argument by stating that the ALJ erred when she discounted scans which indicated moderate degenerative disc disease and foraminal narrowing. Pl.'s Brief, ECF No. 10, at 9. Even assuming that this scan result established spinal stenosis resulting in narrowing between the vertebrae, Plaintiff cannot meet the Listing requirements because he is able to ambulate effectively, as discussed above. Thus, there is no need to further discuss the evidence at Step two.

Listing 12.04 relates to major depressive disorders and requires an applicant to meet either paragraphs A and B or paragraph C of the Listing. Listing 12.04 impairments are such that they prevent all gainful activity. 20 C.F.R. § 404.1525. In this case, the ALJ started her analysis with paragraph B. (ECF No. 7–2, at 17–18). Therein, the ALJ found that because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked limitation' and 'repeated' episodes of decompensation, each of extended duration," paragraph B criteria are not satisfied. (ECF No. 7–2, p. 18). Plaintiff has only mild restrictions in activities of daily living. He maintains personal needs and grooming, prepares his own meals, and completes chores such as laundry, cleaning and making the bed. (R. 41, 42, 44, 190, 191). Additionally, the State agency consultants determined that Plaintiff had no more than mild difficulties with activities in daily living. (R. 65). Plaintiff's social functioning was determined to be no more than moderately difficult (R. 67), and he has only moderate difficulty with regard to concentration, persistence or pace. (R. 66). Although Plaintiff experienced one to two episodes of decompensation, in order to meet the criteria, the repeated espisodes of decompensation must

11

have been "three within one year or an average of once every four months." 20 C.F.R. pt. 404, subpt. P, app. I, § 12.00(C)(4). Thus, the paragraph B criteria are not satisfied.

Plaintiff, however, asserted that the ALJ improperly discounted his GAF score of 48, which is indicative of serious impairments in social, occupational and social function. Notably, a GAF score is only a snapshot opinion about the level of functioning. *Black v. Colvin*, 2015 WL 1746121, at *2 (W.D. Pa. Apr. 16, 2015). "Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Id.* More importantly, a failure to discuss GAF scores does not necessarily constitute error when the ALJ had conducted a thorough analysis of the medical evidence regarding plaintiff's mental impairments. *See Coy v. Astrue,* 2009 WL 2043491, at *13–14 (W.D. Pa. July 8, 2009). "This is particularly true if the mental health provider's report does not relate the score to specific limitations, or explain the basis for the GAF rating, or if the ALJ discussed the records where the GAF scores were provided." *Black,* 2015 WL 1746121, at *2; *see also Gilroy v. Astrue,* 351 F. App'x 714, 715–16 (3d Cir. 2009); *Shamonsky v. Comm'r of Soc. Sec.,* 2011 WL 3101800, at *6 (W.D. Pa. July 25, 2011). Like other evidence, a GAF score may be accorded little or no weight depending upon its consistency with the other relevant evidence in the record. *Torres v. Barnhart,* 139 Fed. App'x 411, 415 (3d Cir. 2005).

In this case, the ALJ expressly considered all of the GAF scores in the record, including the consultative exam, and determined that they were of limited evidentiary value as they were subjectively addressed. (R. 20). Moreover, the physicians did not tie the GAF scores to any specific limitation relevant to Plaintiff's residual functional capacity. Accordingly, the ALJ did consider the pertinent records and properly explained her approach to those records.

Plaintiff also contends that his records while incarcerated reflect that he was anti-social, had poor judgment, poor insight and psychotic thought content which were indicative of a serious affective disorder. In fact, the records indicate Plaintiff showed no paranoia or psychosis (R. 261-263), his judgment was documented as intact or fair on multiple occasions (R. 253, 255, 260, 262), it was only documented on two occasions that Plaintiff had poor insight (R. 258, 263) while his insight was intact to limited on five occasions (R. 253, 255, 260-262). Thus, this argument is without merit regarding Plaintiff's ability to meet Listing 12.04 criteria.

Lastly, Plaintiff argues that his functioning is in a highly supportive environment which supports a finding that he meets Listing 12.04. Listing 12.04 paragraph C criteria is only met by showing a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Pt. 404, Subpt. P, App'x 1, § 12.04(C)(3). Here, however, there is no indication of a continued need for such an arrangement. The Department of Corrections noted that Plaintiff would reside on his own after his stay at a halfway house. (R. 271). Furthermore, Plaintiff testified that he is trying to come back to Pittsburgh and the only reason he was sent to the halfway house after his incarceration was "because they didn't have a home plan." (R. 31). Therefore, this argument is also without merit.

### 2. The ALJ Properly Weighed the Opinion of the Consultative Examiner

Plaintiff asserts that the ALJ did not give sufficient weight to the opinion of the consultative examiner, Dr. Eric Bernstein, regarding Plaintiff's inability to perform work that required standing and/or walking for long periods. The Social Security Regulations set out factors to consider in weighing medical opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). As such, "[t]he

13

Administration generally gives 'more weight to opinions from [an applicant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the applicant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Soto v. Astrue*, 2009 WL 2327402, at *5-6 (E.D. Pa. July 28, 2009) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

In this case, Plaintiff saw Dr. Bernstein on only one occasion at the request of the Bureau of Disability Determination. (R. 469). Dr. Bernstein noted that Plaintiff walked to the appointment and experienced no difficulties. *Id.* Dr. Bernstein then noted that "***by Mr. Ross' report***, he is unable to stand or walk for long periods of time without pain and thus ***at least by his report***, he would not be able to perform work."[5] (R. 473) (emphasis added). Based on the standards described above, the ALJ properly weighed all the evidence and concluded that the evidence did not support the limitations noted by Dr. Bernstein that were merely based on the subjective statements/reports of Plaintiff himself.

### 3. Substantial Evidence Supports the ALJ's Finding that Plaintiff has the Residual Functional Capacity to Perform Light Work

Plaintiff argues that the ALJ improperly concluded that he could perform light work. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting Hartranft, 181 F.3d at 359 n. 1); *see also* 20 C.F.R. § 404.1545(a). The ALJ must consider all relevant evidence when determining an individual's

---

5. Plaintiff stated that Dr. Bernstein opined that he was unable to work, however, this was a misstatement of the record. Dr. Bernstein merely noted what Plaintiff had stated. In fact, in answer to question 4 of the medical source statement (whether the "above are assumed to be your opinion …" SSA Form HA-1152-U3), Dr. Bernstein answered N/A. (R. 473).

14

residual functional capacity. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546. That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. *See* 20 C.F.R. § 404.1545(a). Moreover, the ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform light work. The SSA defines work as "light" when it

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Plaintiff contends, however, that he should have been assessed a sedentary RFC. Pls. Br. ECF No. 10 at 13. In support of this claim, he relies solely upon his own testimony that he can walk no more than four blocks and can lift only ten to fifteen pounds when grocery shopping. *Id.* at 12-13. Yet, there is no objective medical evidence in the record which limits Plaintiff to sedentary work. After careful consideration of all the evidence, the ALJ concluded that Plaintiff's contentions were out of proportion to and inconsistent with the medical evidence of record. (R. 19). Credibility determinations made by the ALJ is entitled to great deference by the district court. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). This determination must "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and

15

the reasons for that weight." SSR 96-7; *see also Lang v. Barnhart*, 2006 WL 3858579, at *10 (W.D. Pa. Dec.6, 2006). The ALJ complied with SSR 96-7.

Under the applicable regulations, a plaintiff's daily activities are a valid factor to be considered by the ALJ when conducting an inquiry as to the reliability of the claimant's subjective complaints. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about his limitations or symptoms is not fully credible. *See Burns v. Barnhart,* 312 F.3d 113, 129-130 (3d Cir. 2002). Here, Plaintiff's reported daily activities suggest that he is not limited, as one would expect, given his reported symptoms and limitations. Plaintiff maintains personal needs and grooming, prepares his own meals, cleans, makes his bed and does laundry. (R. 41, 42, 44, 190, 191). He spends time with others, uses public transportation often, shops in stores and attends church. (R. 43, 45, 192, 193). He testified he is able to lift and/or carry ten to fifteen pounds, which is clearly within the definition of light work. Moreover, no treating or examining medical source reported any limitations as to Plaintiff's activities of daily living.

Furthermore, the ALJ extensively discussed the medical evidence including physical examinations that documented that Plaintiff has normal reflexes and strength, normal gait and balance, and adequate range of motion. (R. 375, 377, 381, 399, 410, 423-24, 469, 498, 505, 517). In fact, there was no apparent distress when Plaintiff was examined and he ambulated about the room very easily. (R. 377, 381, 423, 469).

Lastly, the ALJ noted that the State agency medical consultants found that Plaintiff could perform light work. Substantial weight was given to the State agency consultants as they are deemed to possess specific understanding of the disability program and the evidentiary

requirements. SSR 96-6p. Furthermore, the assessments were consistent with and supported by the record evidence. Accordingly, the ALJ extensively reviewed the record and the finding of light work capability was appropriate.

## IV.     Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges of which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a limited range of work at the light exertional level.

For the reasons hereinabove set forth, the Court will **GRANT** the Motion for Summary Judgment filed by the Commissioner and **DENY** the Motion for Summary Judgment filed by Plaintiff. An appropriate Order follows.

McVerry, S.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER J. ROSS,<br>      **Plaintiff,**<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY,<br>      **Defendant.** | 1:14-cv-318-TFM |

## ORDER

**AND NOW**, this 29th day of July, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's MOTION FOR SUMMARY JUDGMENT (ECF No. 9) is **DENIED**, and Defendant's MOTION FOR SUMMARY JUDGMENT (ECF No. 11) is **GRANTED**. The clerk shall docket this case as **CLOSED.**

BY THE COURT:

s/ Terrence F. McVerry
United States District Judge

cc:   **Michael J. Koehler**
      Email: mkoehler@npslaws.com

      **Christian A. Trabold**
      Email: christian.a.trabold@usdoj.gov

      (via CM/ECF)